INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC., Plaintiff-Appellant, *v.* THE CITY OF EVANSTON *et al.*, Defendants-Appellees.

First District (2nd Division)   Nos. 76-1500, 77-573 cons.

Opinion filed September 27, 1977.—Modified on denial of rehearing November 1, 1977.

444

Singer, Stein & Green, of Chicago, for appellant.

Jack M. Siegel, of Evanston, for appellees.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

These consolidated appeals concern the continued occupancy by plaintiff, International Society for Krishna Consciousness, Inc., of premises commonly known as 1014 Emerson Street in Evanston, Illinois. Plaintiff, a not-for-profit religious organization, utilizes the premises as a temple, theological school, and place of religious worship. Although the premises are classified for C-2[1] commercial purposes, the use of the premises as a theological school and related accessory uses are prohibited without a special use permit. The cases before us exemplify plaintiff's protracted efforts to secure such a permit from defendants, the City of Evanston and others.

Case No. 76-1500 is an interlocutory appeal from an order of the trial

---

[1] The C-2 district in the City of Evanston Zoning Ordinance is one of the commercial zoning districts which permits a number of commercial uses. A variety of special uses may be authorized, including theological school buildings and uses.

court which denied plaintiff's request for a preliminary injunction. The preliminary injunction would have restrained defendants from proceeding against plaintiff pending final resolution of the lawsuit. Case No. 77-573 is an appeal from an order of the trial court which granted summary judgment in defendants' favor, which denied plaintiff's cross-motion for partial summary judgment, which dismissed plaintiff's amended complaint, which granted judgment in defendants' favor on their counterclaim, and which issued a writ of injunction as prayed for in defendants' counterclaim. That injunction permanently restrained and enjoined plaintiff from using or occupying the premises in question as a theological school, temple or related accessory uses, or from, in any manner, violating the Zoning Ordinances, Building Code, Electrical Code, or other ordinances of the City of Evanston. The two cases were consolidated by order of this court.

Plaintiff contends in its interlocutory appeal that the court below abused its discretion in denying plaintiff's request for a preliminary injunction. When the court denied the request, it permitted plaintiff to file an amended complaint for injunction, declaratory judgment, and damages, and the court also allowed plaintiff an extension of time to answer defendants' counterclaim. These matters culminated in the second appeal. In case No. 77-573, defendants moved for and were granted summary judgment. Plaintiff raises the following issues in its appeal from that final judgment: (1) whether summary judgment was properly granted; (2) whether the city's decision to revoke or withdraw a certain ordinance was arbitrary, capricious, and unreasonable; (3) whether the city's decision to deny a second application for a special use permit was arbitrary, capricious, and unreasonable; (4) whether the denial of the second application violated plaintiff's constitutional right to freely exercise its religion; (5) whether the second application was denied for reasons having no substantial relationship to public safety, health, morals, or welfare; (6) whether the provisions of the Municipal Code of Evanston dealing with special use permit application procedures are constitutionally sufficient; and (7) whether the city is estopped to assert a legal position inconsistent with its enactment which originally granted plaintiff an extension of time for its special use permit.

A review of some of the significant events is necessary to understand our disposition of these complex appeals. Plaintiff brought a complaint for injunction and declaratory judgment against defendants, City of Evanston, William Dettmer, and M. Garland. Dettmer was the city's director of inspections and permits; Garland was the city's chief property standards inspector. Within the complaint plaintiff made numerous allegations which are hereinafter set forth. Plaintiff took possession of the disputed premises in Evanston under a lease on October 1, 1972; and on

October 4, 1972, plaintiff and its landlord submitted an application to the Zoning Board of Appeals of Evanston (Zoning Board) for a special use permit to use the premises as a theological school. On March 20, 1973, the Zoning Board conducted a hearing and reported its findings and recommendations to the Mayor and City Council of Evanston. The Zoning Board found that the proposed special use was designed, located, and proposed to be operated for public health, safety, and welfare, as the change in the premises from its former use as a storage warehouse and the correction of building violations would be in the best interests of the community. In addition, the Zoning Board also found that the proposed special use would not cause appreciable injury to the value of other property; instead, the use would benefit surrounding properties because plaintiff would be upgrading the premises. Upon the completion of these findings, the Zoning Board then recommended to the Evanston City Council that plaintiff's application for a special use permit be granted subject to compliance with zoning ordinances, the Building Code, and all other applicable laws.

On July 30, 1973, the Evanston City Council referred plaintiff's application back to the Zoning Board for further findings of fact. The Board conducted additional hearings and again found that plaintiff's proposed special use was designed, located, and proposed to be operated so that public health, safety, and welfare would be protected. The Board again found that the proposed use would not cause appreciable injury to the value of surrounding property. The Board again recommended that the special use permit be granted subject to the condition that all housing, electrical, plumbing, and building violations be corrected within 120 days. If the violations were not corrected within the stipulated time period, the Board then recommended that the application should be denied. On March 25, 1974, the Evanston City Council adopted ordinance 7-0-74 granting the special use permit subject to the correction of violations within 180 days.

Prior to the expiration of the 180-day period, plaintiff petitioned the City Council for additional time in which to correct violations. The City Council then enacted an ordinance granting an extension of time to February 15, 1975. Once the additional time was granted, plaintiff allegedly became obligated under a certain building contract. The subcontractors were issued permits to correct violations on November 8, 1974. On November 11, 1974, however, the Evanston City Council withdrew its ordinance granting the extension of time. In a notice dated November 13, 1974, plaintiff was notified that its permits issued by the Department of Inspection and Permits were revoked effective November 12, 1974.

Plaintiff entered into an installment agreement for warranty deed for

the premises on February 20, 1975. On May 16, 1975, plaintiff then submitted a second application to the Zoning Board for a special use permit. The Board thereafter made the same basic findings it had previously and again recommended that the special use permit be granted. This time the Board recommended that the permit be subject to the conditions that the wholesaling and storage of incense on the premises and other commercial activities be eliminated; that the maximum occupancy on the premises be 46; that the owner make an annual payment in lieu of taxes if the property should be· exempted from taxation; and that the applicant submit a recordable covenant re the conditions enumerated. On December 9, 1975, the Planning and Development Committee of the Evanston City Council passed a motion requiring plaintiff to submit a written report regarding zoning ordinance requirements, the impact of the proposed use, and the number of motor vehicles owned by those occupying the premises. Plaintiff was also asked to provide a floor plan of the building. On February 15, 1976, plaintiff complied by providing both the report and the floor plans.

Nevertheless, on August 23, 1976, the Planning and Development Committee made certain findings of fact which were in sharp contrast to those by the Zoning Board. The Committee found that plaintiff had not demonstrated that the proposed use was designed, located, and proposed to be operated to protect public health, safety, and welfare because the frequent chanting at the temple disturbed neighbors, because the large number of parked cars generated by the operation created traffic congestion, and because the dilatory response in meeting code violations and answering requests for information made it unlikely that public health and safety would be adequately protected. For these reasons, the Committee also found that plaintiff had not demonstrated that the use would not cause appreciable injury to the value of surrounding property. Lastly, the Committee also found that plaintiff had not demonstrated that the use "will not subvert or defeat the primary purpose of the zoning ordinance, or the zoning district or area for which it is proposed, when its effect is considered in conjunction with the cumulative effect of the number of various special uses of all types already located in the adjacent area."

On September 13, 1976, at a meeting of the Evanston City Council, the Committee reported its recommendation and that of the Zoning Board. The Evanston City Council thereafter passed a motion denying plaintiff's second application for a special use permit. On September 28, 1976, defendant Garland, chief property standards inspector, sent plaintiff a letter ordering it to vacate the premises on or before October 31, 1976, under pain of future legal proceedings. All of these facts were set forth in plaintiff's complaint.

In their answer to the complaint, defendants admitted almost all of the background information alleged by plaintiff, but denied that any contracts were contingent or became absolute upon the extension of the 180-day time period or the issuance of permits. Defendants did allege, however, that the ordinance purportedly enacted to extend the time period for correction of code violations was itself null and void because that enactment purported to amend ordinance 7-0-74 without a public hearing as required. Although defendants admitted that certain permits were issued, they denied that plaintiff secured any rights thereunder or became obligated on certain contracts as a result. Defendants also alleged that the city withdrew the ordinance permitting the extension because the corporation counsel informed the City Council that the ordinance was null and void because it was adopted without a public hearing. In addition, defendants alleged that the provisions of the ordinance were no longer applicable because plaintiff's original special use permit had expired due to plaintiff's failure to comply with the conditions imposed. Defendants then counterclaimed for an injunction restraining plaintiff from occupying or using the premises as a theological school or in any manner violating applicable zoning ordinances or building codes. A hearing on these matters was held on November 1, 1976.

A minister and president of the Evanston Krishnas, Ron Marinelli, testified as to the nature of the religion, its usual practices and operations, a description of the premises, and the daily activities of the religion's devotees. Since September 1976, the Evanston group has been attempting to relocate, has looked at three or four places in Chicago but has not entered into any agreements. Upon cross-examination Marinelli stated that when the group began to make payments pursuant to the purchase agreement for the premises, plaintiff did not have a special use permit. After the argument of counsel, defendants moved that plaintiff's motion for a preliminary injunction be denied. The preliminary injunction was then denied.

A substitution of attorneys was filed a week later and plaintiff made a motion to reconsider the issuance of a preliminary injunction, which motion was then granted. Another hearing was held and Marinelli again testified. Besides repeating his previous testimony, Marinelli testified concerning the purchase agreement and payments pursuant thereto. Although the building contractor, Ashland Building Company, began work on the premises, the contractor stopped working when the building permits were revoked. Marinelli also discussed certain checks he had written as payments under the purchase and building contracts and for attorney's fees.

Defendants called several city inspectors, all of whom discussed the numerous code violations which exist in plaintiff's temple. Their

testimony demonstrated the number and nature of violations in regard to the building, electrical, and plumbing regulations. A series of 42 photographs were also introduced into evidence which clearly reflect the violations. Although construction permits are needed to repair many of the violations, the witnesses explained that the necessary permits cannot be issued while premises are in violation of the zoning ordinance. Lastly, all of the inspectors agreed that the disputed premises could be repaired.

Following completion of the evidence and the argument of counsel, the court denied plaintiff's motion for a preliminary injunction; the court also denied plaintiff's motion for a stay order pending appeal. Plaintiff then took this interlocutory appeal. On the same day of the court's order and plaintiff's interlocutory appeal therefrom, the court allowed plaintiff's motion for leave to file an amended complaint and for an extension of time to answer defendants' counterclaim.

In case No. 77-573, plaintiff filed its amended complaint against the City of Evanston and Frank Hoover, a City Council member. The six-count amended complaint sought an injunction, declaratory judgment, and damages. In essence, the amended complaint alleged that defendants infringed upon plaintiff's free exercise of religion by unlawfully withdrawing an extension of a special use permit and by denying the second application; that the Evanston procedures for the issuance of special use permits are violative of due process; that defendants deprived plaintiff of equal protection and due process by its actions; that the denial of the second application had no basis in fact; and that defendants wilfully and maliciously interfered with plaintiff's property rights and free exercise of religion. Defendants generally denied all allegations while reasserting all the claims and defenses offered in response to the original complaint. Plaintiff also answered defendants' counterclaim to the original complaint which had sought an injunction restraining plaintiff from using the premises. In plaintiff's answer, it denied the allegations and disputed the reasonableness of the zoning ordinance.

Defendants filed a motion for summary judgment accompanied by an affidavit of the corporation counsel and the report of proceedings from case No. 76-1500. The attorney's affidavit summarized the various pleadings and the testimony from the hearings in 76-1500. Plaintiff then filed a motion to strike the affidavit and defendants' motion for summary judgment. At the same time plaintiff filed a cross-motion for partial summary judgment on counts I and III of the amended complaint. The court entered judgment in defendants' favor and granted their motion for summary judgment, dismissed plaintiff's amended complaint with prejudice, entered judgment for defendants on their counterclaim, and enjoined plaintiff from using or occupying the premises or, in any manner, violating the various ordinances and building codes. Plaintiff was also

ordered to terminate use and occupancy of the premises within 30 days. In case No. 77-573, plaintiff appeals from that entire judgment order.

By an order dated May 5, 1977, this court consolidated the two appeals and granted plaintiff's motion for a stay of enforcement of the lower court's judgment in 77-573. During the period of the stay we have granted, however, plaintiff has been ordered not to unreasonably violate the city's Building Code, Electrical Code, or other ordinances with respect to the use of the premises.

I.

■■ As these separate appeals involve common parties, the same property and common issues of fact and law, we consolidated the cases for oral argument and opinion. (*Nutwood Drainage & Levee District v. Mamer* (1956), 10 Ill. 2d 101, 104, 139 N.E.2d 247; *Buschmann v. Walsh* (5th Dist. 1970), 120 Ill. App. 2d 242, 244, 256 N.E.2d 882.) Our disposition of these appeals, however, is such that we need not reach all of the contentions raised.

Plaintiff secured its special use permit by ordinance 7-0-74 on March 25, 1974. Thereafter it discovered that it could not possibly correct all of the code violations existing in the premises within the 180 days allotted. By a letter dated September 18, 1974, plaintiff notified defendants as to this situation and requested additional time from the Evanston City Council. In fact, plaintiff received additional time by the enactment of an ordinance extending the time period in which to make repairs. We believe the crux of these appeals turns on the propriety of the Council's actions in withdrawing that extension.

The record reflects that the extension was withdrawn because of the legal opinion by defendant's corporation counsel. He stated that the enactment or ordinance for extension was invalid because there was no public hearing. We disagree.

The Illinois Municipal Code contained in the Illinois Revised Statutes specifically provides for the procedures in issuing special use permits. In part, section 11—13—1.1 of the Code provides that:

"A special use shall be permitted only after a public hearing before *some commission or committee designated by the corporate authorities*, with prior notice thereof given in the manner as provided in Sections 11—13—6 and 11—13—7. A special use shall be permitted only upon evidence that such use meets standards established for such classification in the ordinances, and the *granting of permission therefor may be subject to conditions reasonably necessary to meet such standards.*" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—1.1.)

Thus, by State statute, the issuance of a special use permit can only

follow a public hearing before some commission or committee, upon evidence that the use meets the particular ordinance standards; and reasonable conditions may be placed on the issuance of the permit. We turn now to the relevant ordinance pertaining to this matter in the Municipal Code of the City of Evanston.

Section XII, C. 4 of the Evanston Zoning Ordinance states that subsequent to a public hearing, the Zoning Board shall submit its findings on applications for permits for special uses to the City Council with a report and its recommendations. The ordinance then provides in pertinent part that:

"b. The City Council, *upon report of the Board and without further public hearing,* may approve by ordinance or may deny any application for a type one variation or a special use at a particular location or may in writing refer the application back to the Board for further consideration, specifying the reasons therefor * * *." (Emphasis added.)

In the case at bar, therefore, the city was within its rights, as expressed in the ordinance, when it referred plaintiff's application back to the Zoning Board for further consideration. When the Board again recommended issuance with the condition of the period for repairs, the City Council accepted the finding and issued the permit. The problem in the instant case arose because of the apparent misunderstanding of the proper procedure necessary to *extend* the special use permit. Yet the procedure is clearly stated in section XII, C. 4 of the Evanston Zoning Ordinance:

"c. A variation or special use permit approved by the City Council by ordinance shall not be valid after a period of one (1) year, except for planned developments as otherwise set forth in the zoning ordinance, unless during such period such variation or special use shall be established or unless any required building, development or erection permit for an approved variation or special use is obtained within this period, after which construction shall proceed to completion within a reasonable time. *Said one (1) year period may be extended* in writing for good cause for the Director of Inspections and Permits or the City Manager or his authorized representative for up to an additional year, *if* no other zoning changes affecting the property have been made or are formally pending before the City Council or Zoning Amendment Committee; *or said period may be extended by the Council for such time as it shall determine, for good cause and without further hearing before the Board.*" (Emphasis added.)

Thus, by the explicit terms of the ordinance, the period of a special use permit may be extended by the City Council for a time it may determine. There is no need for another public hearing before the Zoning Board.

■■■ Prior to the issuance of plaintiff's special use permit, there were at least two public hearings held before the Board. Thereafter, the City Council approved the issuance of a permit by passage of ordinance 7-0-74. When plaintiff applied for an extension, it was granted by the enactment of another ordinance. A few days later the extension was withdrawn for the single, stated reason that the ordinance granting the extension was invalid because there was no public hearing held. We believe that the ordinance granting an extension was in fact perfectly valid. Neither the State statute, nor the local ordinance required that yet another public hearing be held.

■■ Defendants urge that the City Council had the authority to reconsider and rescind its action pursuant to the usual rules of parliamentary procedure. (*E.g.*, Ill. Rev. Stat. 1975, ch. 24, par. 3—11—20; Rule 21.1 of the Evanston City Council; *People ex rel. MacMahon v. Davis* (1918), 284 Ill. 439, 443, 120 N.E. 326.) While we do not dispute the city's authority to reconsider its action in extending the time period for repairs, the simple answer is that the only basis in the record for such reconsideration was the need for a public hearing and that basis was incorrect.

## II.

■■ Plaintiff filed an interlocutory appeal from the denial of its request for an injunction, and at the same time in the trial court, it moved for and was granted leave to file an amended complaint. The amended complaint did not create a wholly new cause of action (*cf. Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 272, 193 N.E.2d 833; *Wende v. Chicago City Ry. Co.* (1915), 271 Ill. 437, 442, 111 N.E. 275), but instead expanded the cause of action in the original complaint. When defendants were granted summary judgment on plaintiff's amended complaint and on their own counterclaim, plaintiff then appealed again. Thus, we are confronted with two appeals wherein plaintiff raises numerous errors pursuant to various theories, all with the apparent objective of securing a special use permit for the disputed premises.

■■ Defendants have not filed a motion to dismiss plaintiff's interlocutory appeal. More than moot questions or mere abstract propositions are presented by the appeal (*People v. McCullum* (1977), 66 Ill. 2d 306, 316, 362 N.E.2d 307; *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 379, 121 N.E.2d 486; *People ex rel. Cairo Turf Club, Inc. v. Taylor* (1954), 2 Ill. 2d 160, 164, 116 N.E.2d 880); and a decision could affect the rights and interests of the parties (*Wheeler v. Aetna Casualty & Surety Co.* (1974), 57 Ill. 2d 184, 189, 311 N.E.2d 134; *Barnard v. Michael* (1945), 392 Ill. 130, 133, 63 N.E.2d 858). In view of the fact that the second appeal encompasses the first, however, the interlocutory

appeal is now unnecessary. (*Cf. Phillips v. O'Connell* (1st Dist. 1945), 326 Ill. App. 15, 22, 61 N.E.2d 59.) However, to dismiss the appeal in case No. 76-1500 would leave intact the circuit court's denial of a preliminary injunction and the inferences, if any, that could be drawn therefrom. We think that the real issue before us is whether summary judgment was property granted in case No. 77-573. Consequently, we need not reach the question of whether the court below abused its discretion in denying plaintiff a preliminary injunction in case No. 76-1500. A reviewing court will not consider questions or contentions which are not essential to the determination of the case before it. (*Yale Development Co. v. Andermann* (2d Dist. 1976), 37 Ill. App. 3d 33, 39, 344 N.E.2d 701; *Navickas v. Lawrence Hall, Inc.* (1st Dist. 1967), 85 Ill. App. 2d 43, 49, 228 N.E.2d 234.) However, because of our holding in case No. 77-573, we deem it in the best interest of judicial economy that the order of the circuit court of Cook County in case No. 76-1500 be reversed.

## III.

■■■ Plaintiff contends that summary judgment was improper because evidentiary matters were weighed and appraised. Defendants, on the other hand, contend summary judgment was proper because there were no material issues of fact. In granting summary judgment for defendants, the court had to examine all of the pleadings, affidavits, exhibits, and other documents before it. Plaintiff asserts, however, that the court improperly considered an affidavit supplied by defendants' attorney, the corporation counsel of Evanston. The affidavit summarized the pleadings up to that point and paraphrased the testimony offered at the hearings in case No. 76-1500. In its motion to strike the affidavit and on appeal, plaintiff maintains that the affidavit does not meet the requirements contained in Supreme Court Rule 191, particularly those providing that an affidavit in support of summary judgment "shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." (Ill. Rev. Stat. 1975, ch. 110A, par. 191.) Defendants argue, however, that all matters in the affidavit were within the personal knowledge of the corporation counsel.

Even if we were willing to concede that the matters alleged were within the affiant's personal knowledge, we do not believe that the corporation counsel, if sworn as a witness, could testify competently thereto. (See *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497; *Bergesen v. Clauss* (1958), 15 Ill. 2d 337, 340, 155 N.E.2d 20; *Joseph W. O'Brien Co. v. Highland Lake Construction Co.* (1st Dist. 1972), 9 Ill. App. 3d 408, 414, 292 N.E.2d 205.) The affidavit contains not only allegations as to acts and statements attributable to other persons,

but also conclusions to which the affiant could not competently have testified. (*Clausen v. Ed Fanning Chevrolet, Inc.* (3d Dist. 1972), 8 Ill. App. 3d 1053, 1056, 291 N.E.2d 202.) For example, the affidavit states:

"Thus, at the time of entering into the original lease, the plaintiff knew or should have known that its proposed use was not permitted under the Zoning Ordinance of the City of Evanston.

\* \* \*

The special use permit granted in March of 1974 therefore expired by its own terms because of the failure of the plaintiff to comply with the conditions which were imposed on the special use ordinance."

Conclusory statements do not meet the requirements of Supreme Court Rule 191.

Assuming that the affidavit is improper, plaintiff comments that defendants' motion for summary judgment and plaintiff's cross-motion for partial summary judgment must be decided on the weight of the pleadings and the report of proceedings in case No. 76-1500. We agree with plaintiff on the unusual nature of this case. It is the only church or theological school zoning case we have discovered which was decided on a motion for summary judgment, prior to any discovery or depositions. Nevertheless, defendants urge that summary judgment was proper because there were no material issues of fact.

In *Presto Manufacturing Co. v. Formetal Engineering Co.* (1st Dist. 1977), 46 Ill. App. 3d 7, 10-11, 360 N.E.2d 510, we recently set forth the principles by which to review the propriety of such a motion:

"A motion for summary judgment is proper where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, show that there is no genuine issue as to any material fact. (Ill. Rev. Stat. 1975, ch. 110, par. 57; *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26, 305 N.E.2d 535.) Yet the reviewing court will reverse an order granting summary judgment if it determines that a material question of fact does exist (*Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1) because summary judgment is inappropriate under such circumstances (*20 East Cedar Condominium Association v. Luster* (1st Dist. 1976), 39 Ill. App. 3d 532, 534, 349 N.E.2d 586). The right of the moving party must be clear and free from doubt. (*Lesser v. Village of Mundelein* (2nd Dist. 1975), 36 Ill. App. 3d 433, 437, 344 N.E.2d 29; *National Bank v. S. N. H., Inc* (1st Dist. 1975), 32 Ill. App. 3d 110, 117, 336 N.E.2d 115; *Wegener v. Anna* (5th Dist. 1973), 11 Ill. App. 3d 316, 320, 296 N.E.2d 589.) In making its determination, a court must construe the pleadings strictly against

the moving party and liberally in favor of the opponent (*Donart v. Board of Governors* (4th Dist. 1976), 39 Ill. App. 3d 484, 486, 349 N.E.2d 486; *Hernandez v. Trimarc Corp.* (1st Dist. 1976), 38 Ill. App. 3d 1004, 1006, 350 N.E.2d 202; *Cronin v. Delta Air Lines, Inc.* (1st Dist. 1974), 19 Ill. App. 3d 1073, 1076, 313 N.E.2d 245); and if the facts admit of more than one conclusion or inference, including one unfavorable to the moving party, the motion for summary judgment should be denied (*Dakovitz v. Arrow Road Construction Co.* (2d Dist. 1975), 26 Ill. App. 3d 56, 60-61, 324 N.E.2d 444).

Although summary judgment is an important tool in the administration of justice and its use encouraged in proper cases (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 586, 272 N.E.2d 497; *Allen v. Meyer* (1958), 14 Ill. 2d 284, 292, 152 N.E.2d 576), courts must remain cautious not to preempt the right to trial by jury where a material dispute may exist (*Anderson v. Dorick* (3rd Dist. 1975), 28 Ill. App. 3d 225, 227, 327 N.E.2d 541). When faced with a disagreement as to material facts, the court must deny the motion and set the cause for trial. (*Reith v. General Telephone Co.* (5th Dist. 1974), 22 Ill. App. 3d 337, 339, 317 N.E.2d 369.)"

Applying these rules to the case at bar, we believe the court below prematurely and incorrectly granted summary judgment to defendants.

■■ To have granted summary judgment in this case, the court must have impermissibly drawn inferences from undisputed facts even though a reasonable person could have drawn different conclusions from the same facts. (*Century Display Manufacturing Corp. v. D. R. Wager Construction Co.* (1st Dist. 1977), 46 Ill. App. 3d 643, 648, 360 N.E.2d 1346; *Toman v. Svoboda* (1st Dist. 1972), 4 Ill. App. 3d 148, 151, 280 N.E.2d 499.) The fact that the Assessor raised the assessed valuation of the property could indicate plaintiff's improvements to the property. The fact that the premises are not yet in full compliance with all applicable codes does not necessarily mean that plaintiff has made no substantial effort to secure building permits or correct code violations. Since the Zoning Board recommended on three separate occasions that plaintiff be issued a special use permit, a reasonable person could well conclude that plaintiff had made a substantial effort. Furthermore, the testimony offered in case No. 76-1500 concerning code violations was the result of an inspection a few days prior to the hearing. Defendants offered no testimony or evidence concerning the building's state in March 1973, November 1973, or October 1975, when the Zoning Board made findings favorable to plaintiff. Moreover, no evidence was offered as to the building's state in September 1976, when the city denied plaintiff's second application. The evidence or lack thereof leaves defendants' right to summary judgment far from clear and hardly free from doubt.

■■ Defendants maintain that this is a simple zoning case wherein the

city exercised its well-known police powers to regulate property for the protection of public health, safety, morals, and welfare. We are troubled, however, by the municipality's inconsistent position. If the city had not issued a special use permit originally, and if it had not thereafter extended the period for repairs, we might agree that this is a simple zoning case. Yet the city did issue the permit and did provide the extension; and we cannot ignore that the Zoning Board consistently made favorable findings. All of these are also facts. They, too, admit of more than one conclusion or inference, including one unfavorable to the moving party. Although defendants argue that plaintiff's failure to show compliance with the conditions imposed on the permit is fatal to its case, we are unpersuaded because of the unique facts before us.

■■ Our disposition of this case should not be interpreted as a departure from the line of cases holding that religious institutions are subject to reasonable municipal regulation. (See, for example, *South Side Move of God Church v. Zoning Board of Appeals* (1st Dist. 1977), 47 Ill. App. 3d 723, 365 N.E.2d 118; *Coston Chapel A.M.E. Church v. Chaddick* (1st Dist. 1972), 9 Ill. App. 3d 321, 292 N.E.2d 215; *St. James Temple v. Board of Appeals* (1st Dist. 1968), 100 Ill. App. 2d 302, 241 N.E.2d 525.) In our opinion, however, it would be hasty and premature to apply the rulings gleaned from those cases to the instant one. Although plaintiff has tried to secure a permit for five years, the record before us reflects a case still in its earliest stages.

■■ Plaintiff should be given the opportunity to establish, if it can, that it is entitled to an injunction, declaratory judgment, and damages. Therefore, we think it inappropriate to comment on the merits of plaintiff's case. Due to the position we have taken in part I of this opinion, we find it unnecessary to discuss the other issues plaintiff has raised, particularly those in connection with its second application for a special use permit. Those questions are of a constitutional dimension; and it is well settled that when a case may be disposed of on other grounds, constitutional questions will not be considered. *Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 22, 268 N.E.2d 26; *People ex rel. Downs v. Scully* (1951), 408 Ill. 556, 563, 97 N.E.2d 829; *Winston v. Zoning Board of Appeals* (1950), 407 Ill. 588, 592, 95 N.E.2d 864.

## IV.

These consolidated appeals originated from orders entered by the circuit court of Cook County in its case No. 76 CH 6336.

Our case No. 76-1500 is an appeal from an order entered by the circuit court on November 16, 1976, denying plaintiff's motion for a preliminary injunction. We reverse that order and note that the issues raised in appeal No. 76-1500 are now moot for the reasons set forth in this opinion.

Our case No. 77-573 is an appeal from a final judgment order entered on

458

March 9, 1977 by the circuit court in its case No. 76 CH 6336. For the reasons set forth in this opinion, that final judgment order is reversed and the cause is remanded with directions to conduct further proceedings consistent with this opinion.

Case No. 77-573 reversed and remanded with directions.

Case No. 76-1500 reversed.

STAMOS and PERLIN, JJ., concur.